WILLIAM SHEPPARD, Respondent, v. JOHN T. STEELE, et al., Appellants.

(GENERAL TERM, THIRD DISTRICT, MAY, 1869.)

Where an unfinished vessel leaves the shipyard of her builder for further work to be done upon her at another port (three-quarters of a mile distant), and proceedings to enforce a lien under chapter 482, Laws 1862, for debt contracted at the shipyard are taken before she leaves such port, the lien, it seems, is not lost, although no specification as required by section 2 of the act has been filed.

If a particular statement of the claim, specifying in detail the items, &c., with dates, is filed in due time, although filed as part of the proceedings to enforce the lien, and not separately, it is a compliance with the requirements of the statute (§§ 2 and 3), in regard to the filing of a specification.

THIS is an appeal from a judgment entered upon the report of a referee on the 9th day of December, 1867, in Ulster county clerk's office, in favor of the plaintiff, against the defendants, for $761.16, damages and costs.

This action was upon a bond given by William C. More and the defendants Steele and Mills, under section 11 of the "act to provide for the collection of demands against ships and vessels," passed April 24, 1862 (Laws of 1862, page 596), to procure the discharge of the schooner "Charles S. Bayliss," which had been seized by virtue of a warrant issued under said act.

The vessel was built by one Jacob Fox, at his shipyard in South Rondout, for the defendant Steele and others, and Fox

employed the plaintiff to do the iron work. Steele was present during the progress of the work, and directed in regard thereto.

The schooner was launched on the 8th of September, 1866 ; on that day she was taken to Wilbur from the port of South Rondout, which is in the town of Esopus, across the creek, a distance of from one-half to three-fourths of a mile, to have a center-board put in ; Wilbur is in the town of Kingston, where she remained, and where, on the 12th of September, 1866, she was seized as aforesaid. South Rondout and Wilbur are both situate on the Rondout creek, which is an arm of the sea.

The plaintiff's application for the warrant stated, pursuant to the second requirement of section 5 of said act, the items, with their dates, composing the alleged debt, and which was the only specification filed. This application was presented and read, on applying to the county judge, on the 12th of September, 1866, and afterward on *the same day filed* in the county clerk's office. On the same day the county judge issued the warrant, the vessel was seized, and the bond for its discharge given. The other facts appear in the following opinion.

*S. L. Stebbins,* for the appellants.

*F. L. Westbrook,* for the respondent.

Present — MILLER, INGALLS, and PECKHAM, JJ.

By the Court — INGALLS, J. It seems to be settled by authority that, in case a vessel, upon which labor has been expended and materials furnished in its construction, has not departed from the port where the work was performed and materials were provided, the lien created by statute for such labor and materials continues, although a specification of such lien provided by the statute of 1862 (p. 957, § 2), has not been filed. (*In the Matter of Tilton,* 19 Abb., 50 ; *Delany* v. *Brett,* 4 Rob., 712.)

Sheppard v. Steele.

It is contended by the counsel for the appellant that, from the facts in this case, the vessel must be deemed to have departed from the said port previous to the commencement of the proceedings to enforce such lien. In this we think he is mistaken. She was launched on the 8th of September, in an unfinished state, and ran over to the opposite side of the Rondout creek, to Wilbur, a distance of from half to three-quarters of a mile, for the purpose of having a center-board put in, and from thence she was taken to Jersey City, to be finished. When the proceedings were instituted the vessel laid at Wilbur, not having departed upon a voyage, nor was she employed in any business or trade. We are clearly of opinion that, within the doctrine settled in *Hancox* v. *Dunning* (6 Hill, 494), this vessel should not be regarded as having left the port within the meaning of the statute creating such lien. (See, also, *In the Matter of the Steamboat J. E. Coffee*, Alcot's R., 401.)

Independent of the view taken, I think there was a substantial compliance with the requirement of the statute in regard to the filing of the specification, as on the 12th day of September, 1866, there was filed in the clerk's office of the county of Ulster, as a part of the proceeding to enforce such lien, a particular statement of the plaintiff's claim, specifying in detail the items of labor performed and materials furnished in the construction of said vessel, with the dates of the respective items. The language of the statute, in relation to the filing of specifications, is as follows: "Cause to be drawn up and filed specifications of such lien, which may consist either of a bill of particulars of the demand, or a copy of any contract," &c. A more perfect bill of particulars could not well be prepared than that which accompanied the proceedings which were filed. The statute should receive a reasonable construction, and substance should not be sacrificed to mere form. Every beneficial object which could have been contemplated as the result of filing such specification was attained in this case by making such statement a part of the proceedings. Certainly all parties interested would be as fully informed of

the nature and extent of the plaintiff's claim by an inspection of the specification accompanying the proceedings filed as they would have been if a separate paper had been filed containing the items of the claim.

The appellant's counsel further contends that the statute of 1862, under which the plaintiff's proceedings were instituted, is void, because it encroaches upon the admiralty jurisdiction of the United States. The contrary of this proposition has been repeatedly adjudged. (*In the matter of the steamship Circassian*, 50 Barb., 490, and cases therein cited; *Bird* v. *Steamboat Josephine*, 50 Barb., 501; *Joseph M. Price* v. *The Ship Norway*, manuscript opinion of Judge BLATCHFORD.) To my mind it is very clear that the county judge had jurisdiction to entertain the proceedings. The work performed and materials furnished were not expended in repairing a vessel which had been in service; but in constructing upon land a new vessel which had not been employed in any trade or business, nor had she received an outfit, license or clearance when the proceedings were instituted. Hence the case is relieved of some questions which might arise in regard to a foreign vessel which had put into port merely for repairing, or a vessel which was employed in running from this to another State. (See also *People's Ferry Company, of Boston*, v. *Beers*, 20 How., U. S., p. 393; *McGuire* v. *Card*, 21 How., U. S, 248.) The case at bar is clearly distinguishable from *Bird* v. *The Steamship Josephine* (39 N. Y., 19). The foregoing are all the questions discussed by the appellant's counsel upon the argument. I have examined the other exceptions stated in the points submitted, and do not perceive that any material error was committed by the referee.

The judgment should be affirmed with costs.*

---

* Affirmed by the Court of Appeals.